**N THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| EMELY WINNERT,<br><br>Plaintiff,<br><br>v.<br><br>DEFENSE FINANCE AND ACCOUNTING SERVICE,<br><br>Defendant. | Civil Action No. 1:26-cv-1119 |

**COMPLAINT**

Plaintiff Emely Winnert, by counsel, files this Complaint against Defendant Defense Finance and Accounting Service ("DFAS") and alleges as follows:

**PRELIMINARY STATEMENT**

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3. Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a report finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4. Here, Ms. Winnert's credit reports included a collection account reported by DFAS for a debt that she did not owe.

5. When Ms. Winnert disputed the accounts with the consumer reporting agencies and provided proof demonstrating that she did not owe the debt, DFAS failed to adequately investigate her disputes. Instead, it verified the collection as a valid account with an outstanding balance.

6. As a result, Ms. Winnert alleges claims against DFAS under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b)(1) for its failure: to fully and properly investigate her disputes; to review all relevant information provided by the consumer reporting agencies; and to appropriately mark her account as disputed.

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331, and 15 U.S.C. § 1681(p).

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Winnert's claims occurred in this District.

## PARTIES

9. Ms. Winnert is a natural person who resides in this District and Division. She is a consumer as defined by 15 U.S.C. § 1681a(c).

10. DFAS is an agency of the United States government and a "furnisher" as governed by the FCRA.

## FACTS

11. In the summer of 2025, Ms. Winnert went to a dealership to purchase a car and was surprised when they provided her with her credit score, which seemed very low considering that she pays all her bills on time and has never defaulted on a financial obligation.

12. Ms. Winnert learned that her low credit score was caused by a DFAS collection account, which reflected that she owed $1,785 for tuition.

13. This reporting was inaccurate. Ms. Winnert received tuition assistance as part of her employment with the National Geospatial-Intelligence Agency ("NGA") and complied with all NGA's requirements to receive that assistance.

14. Ms. Winnert spoke to her prior employer at NGA, who confirmed that she did not owe any amounts for tuition assistance and that the attempted collection was an error.

15. Ms. Winnert submitted an online dispute to Experian in June 2025 and explained that the collection account was incorrect, that she did not owe DFAS any money, and that the account should be removed from her report.

16. On July 8, 2025, the Tuition Assistance Program Manager at NGA emailed DFAS and copied Ms. Winnert and stated: “I am contacting you in regards to a debt owed by Winnert, Emely. I am the Tuition Assistance Program Manager for the NGA and the debt was issued in error. Please use the email to serve as proof and documentation that the debt collection was issued in error by our department and Winnert, Emely does not have an financial obligation to pay the agency back.”

17. Ms. Winnert continued to dispute the debt to Experian in July 2025 and August 2025, and explained that the collection account was incorrect, that she did not owe DFAS any money, and that the account should be removed from her report.

18. Experian forwarded these disputes to DFAS, who refused to conduct an adequate investigation into Ms. Winnert’s disputes.

19. Instead, upon information and belief, in response to Ms. Winnert’s dispute, DFAS performed a cursory review of its records and verified its previous reporting that the collection account was a valid account with an outstanding balance.

20. As a result, the collection account continued to report on Ms. Winnert’s credit report.

21. Ms. Winnert then sent written dispute letters to Experian and Trans Union in October 2025.

22. She explained that she did not owe DFAS any money and attached a letter from NGA’s Tuition Assistance Program Manager that explained that Ms. Winnert did not owe the amount that DFAS was reporting on her credit report.

23. Experian and Trans Union forwarded Ms. Winnert’s disputes to DFAS.

24. In response to these written disputes, DFAS again failed to adequately investigate Ms. Winnert's disputes and again verified its previously inaccurate reporting.

25. Ms. Winnert sent three follow-up disputes to Experian and Trans Union in November 2025 and December 2025. Each of these follow-up disputes again explained that Ms. Winnert didn't owe any money to DFAS and attached the NGA letter stating as much.

26. Experian and Trans Union forwarded these disputes to DFAS.

27. In response, DFAS used this same defective investigation process to "investigate" and respond to Ms. Winnert's disputes—instead of contacting the NGA to confirm that Ms. Winnert didn't owe any money for tuition assistance, it just reviewed its own records and verified its previous reporting.

28. Even worse, following some Ms. Winnert's disputes, DFAS has seized Ms. Winnert's refund from the Virginia DMV to satisfy part of the debt that it claims she owes.

29. As a result of DFAS's conduct, Ms. Winnert has suffered significant actual damages, including a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

***DFAS's FCRA Violations Were Willful***

30. DFAS's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. In fact, DFAS acted in accordance with its intended procedures. In addition, DFAS prioritizes processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

31. In addition, the willfulness of DFAS's FCRA violations can be established by, for example:

a. Congress enacted the FCRA in 1970, and DFAS has had over 50 years to become compliant;

b. DFAS is a government agency with access to legal advice through its own counsel and outside litigation counsel. Yet, there is no contemporaneous evidence that DFAS determined that its conduct was lawful;

c. DFAS knew, or had reason to know, that its conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

d. DFAS voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

e. DFAS's FCRA violations were repeated and systematic;

f. DFAS had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

g. DFAS had notice of its defective dispute processing procedures through internal audits and litigation, but chose not to meaningfully change its policies and procedures to comply with the FCRA.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)

32. Ms. Winnert incorporates the preceding paragraphs.

33. On one or more occasion within the past two years, DFAS violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Winnert's disputes.

34. When Ms. Winnert disputed the account with the credit bureaus, DFAS used a dispute system named "e-OSCAR," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

35. E-OSCAR is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

36. E-OSCAR's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

37. Upon information and belief, the ACDV form is way that DFAS has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

38. Upon information and belief, the credit reporting agencies forwarded Ms. Winnert's disputes by ACDVs.

39. DFAS understood the nature of Ms. Winnert's disputes when it received the ACDV forms.

40. Upon information and belief, when DFAS received the ACDV form containing Ms. Winnert's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

41. Upon information and belief, when DFAS receives a consumer dispute through e-OSCAR, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

42. Because of DFAS's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Ms. Winnert suffered actual damages, including a reduced credit score, embarrassment, humiliation, stress, and other emotional distress.

43. DFAS's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Ms. Winnert for punitive damages under 15 U.S.C. § 1681n. In the alternative, DFAS was negligent, entitling Ms. Winnert to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)

44. Ms. Winnert incorporates the preceding allegations.

45. On one or more occasion within the past two years, DFAS violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

46. As Ms. Winnert detailed in the previous Count, DFAS has elected to use the e-OSCAR system for its FCRA disputes from the consumer reporting agencies.

47. When it received the ACDV forms from the credit-reporting agencies, DFAS did not review any of the information that Ms. Winnert included in her dispute, which demonstrated that she did not owe the money that DFAS claimed and therefore DFAS's reporting of the account was inaccurate.

48. If DFAS had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

49. DFAS also ignored the other information that the consumer-reporting agencies provided on Ms. Winnert's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

50. DFAS knew the meaning of the dispute codes used by the consumer-reporting agencies in e-OSCAR.

51. DFAS does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

52. DFAS understood Ms. Winnert's disputes and that she was disputing the balance reported by DFAS.

53. Despite this, DFAS did not update its incorrect reporting regarding the account and continued to inaccurately report the account as an open collection with an outstanding balance.

54. Because of DFAS's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Ms. Winnert suffered actual damages, including a decreased credit score, embarrassment, humiliation, and other emotional distress.

55. DFAS's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

56. In the alternative, DFAS was negligent, entitling Ms. Winnert to recover damages under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D)**

57. Ms. Winnert incorporates the preceding allegations.

58. On one or more occasion within the past two years, DFAS violated 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) by publishing its representations within Ms. Winnert's credit files without also including any notation at all that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

59. For example, DFAS failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field of at least one of the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the accounts were disputed.

60. In addition, DFAS failed to add any other notation that Ms. Winnert's accounts were disputed.

61. Furthermore, DFAS knew that Ms. Winnert disputed the subject accounts through her written disputes letters to the credit reporting agencies.

62. Ms. Winnert's disputes were bona fide as she did not owe the money that DFAS claimed.

63. Because of DFAS's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Ms. Winnert suffered concrete and particularized harm, including but not limited to: credit denial, a reduced credit score, embarrassment, humiliation, and other emotional distress.

64. DFAS's violations were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, DFAS was negligent, entitling Ms. Winnert to recover against it under 15 U.S.C. § 1681o.

65. Ms. Winnert is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from DFAS under 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Ms. Winnert demands judgment for actual, statutory, and punitive damages against Defendant; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**EMELY WINNERT**

*<u>/s/ Kristi C. Kelly</u>*

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167

Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiff*